IN THE UNITED STATES COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Laura H.G. O'Sullivan | ) | |
| *Plaintiff* | ) ) ) | **REMOVAL JURISDICTION** |
| *vs.* | ) ) | |
| **Jeffery Diamond** *et ux* | ) | |
| **Georgia Diamond** | ) | **Case no. 8:19-cv-00818-GJH** |
| *Defendants* | ) ) | |

---

NOTICE OF REMOVAL

**I.** JURISDICTION

This is a §1446 Removal, removed and signed pursuant to Rule 11 of the FRCP.

Copies of the key process, pleadings and orders in the possession of the Defendant are

being submitted via ECF simultaneous with this Notice.  It is being filed within 30 days

of a certain Order of the Montgomery County Circuit Court dated March 12, 2019

**II.** DUE PROCESS

This **removal**  comes after the entry of a Maryland "Rule 14-102 Motion for

Possession" in the above captioned plaintiff on February 26, 2019 in the State action at

the Montgomery County Maryland Circuit Court, a "trust deed sale" case at civil no

417984V.  That motion was granted on March 12, 2019 by "Final Order of Ratification,"

despite the fact that the case had been the subject of a timely Appeal to the Court of

Special Appeals of Maryland on January 11, 2019 (CSA REG 33832018).  In the Plaintiff's Motion for Judgment Awarding Possession, it was stipulated that notice was given but that there had been no response.  In the Final Order of Ratification, the Court noted that "no cause to the contrary thereof having been shown," and proceeded to ratify the final order.  Clearly the case was not ripe for a final order until the Appeal had been addressed.  This action violated defendant's rights to due process guaranteed by the 14th Amendment.   Removal to this Honorable Court would promote justice to the defendants by recognizing their constitutional rights.

Furthermore, Defendant has a constitutional right to the correct application of foreclosure jurisprudence.  This means that this Honorable Court will be addressing the proper application of the UCC to mortgage foreclosures, the federal questions that are inherently raised in the entire family of federally related mortgage loans such as the rules and regulations wrought by the FDIC and its underwriting policies, Consumer Financial Protection Bureau, FTC, Securities and Banking laws and the federally regulated commercial banking practices dealing with the "legal tender" issues of bank currency, to name but a few of the many Federal Jurisdiction questions that apply to credits that sustain the acquisition of real property by persons who borrow money, especially in the "Fannie Mae" and "Freddie Mac" systems.  Those questions will be elaborated upon as the case and its processes are addressed in this Honorable Court.

III      PROTECTING TENANTS IN FORECLOSURE ACT (12 USC §5201 et seq)).

Plaintiff ignored this federal statute which has direct application to the occupancy of an owner allegedly in default.  The PTFA was written broadly enough to clearly cover the circumstances being addressed in this case.  Yet there was no mention, even in passing, by the "movant" who is necessarily seeking possession against "All Occupants" by seeking possession at all, and in violation of the recently renewed (federal) "**Protecting Tenants in Foreclosure Act**", now law again since 2018. To wit-

1.      It is both **necessary** and **proper** to guarantee protection of "All Occupants" in these residential premises, which are the subject of a State Court Maryland "Rule 14-102 Motion for Possession". It is **impossible** to distinguish between 'bona fide' tenants and "the mortgagor or her family", the County Sheriff will clear the land of "All Occupants" or none at all.

2.      Plaintiff "U.S. Bank N.A. etc" is the ostensible "successor" to the federally supplied mortgage product, by 'virtue' of a trust deed sale. This is plainly a 'foreclosure tenancy' covered within the Act as it is expressed by Congress. In order to give full effect to this **Act of Congress**, "All Occupants" must be protected without making subjective and false distinctions.

3.      The defendants captioned are instead entitled regardless of lease conditions to "90 Days Notice to Quit", under the Act of Congress renewed in

2018. At common law, <u>every</u> tenant is actually protected by the requirement to perfect any claims with a '90 Days Notice to Quit' before the end of the term. The natural 'holdover' tenancy after "Sheriff Sale" is still a 'term', an estate from 'year to year' after foreclosing on an "estate of <u>more</u> than one year", or "in fee simple".

4.     If the defendants lost the "fee", they did not lose the immediate tenancy, and it must be protected by Congress in this residential foreclosure, without subjective discrimination or reference to "familiar relations". The term "mortgagor" refers to an *in rem* property interest, i.e. an "interested party".

5.     The *in rem* defendant in a mortgage foreclosure does not carry over to the *in personam* action for ejectment. The federal law makes an impossible distinction that is unenforceable, irrationally based, and pretends to "draft" a "personal status" from unrelated "in rem" foreclosure proceedings, into an alien subject matter. There is no such 'person' as "the mortgagor", and "all occupants" must be protected <u>in order to fully effectuate the federal law</u>.

6.     The Plaintiff is **additionally barred** under the Maryland Real Property Code on a virtually identical provision from obtaining possession of this house against all 'bona fide tenants' for all the same reasons, and who are uniformly protected with or without a "response". The Md. Real Property Code does not impose a duty to "respond" on its protected subjects.

7.        In order to make the law "fully effective", it is both **necessary and proper** to protect **all tenants**, without distinction. This unconstitutional distinction between "mortgagors" and "other occupants" cannot be made by a Sheriff deputy, who will either clear the land of "All Occupants" (including "protected tenants") or not at all.

8.        The "mortgagor" is an *in rem* property interest, not a "person" subject to dispossession; the whole case breaches jurisdictional standards by jumping from 'the land' to 'the occupants'. The "protecting tenants" law at both State and federal level is **irrational** and has no logical basis in execution, and invariably leads to the violation of the protected class by 'selective prosecution'.

9.        As to the federal **and** state laws there is no such thing as a "mortgagor and his family". This interpolation of "*imaginary familiar relationships*" into State and federal law denying protections to "relatives of the mortgagor" is irrational and unenforceable. A "mortgagor" is an *in rem* property interest, not a person that can be sued directly or dispossessed from the land. **The property interest does not occupy the house** and it does not have "relatives".

10.       The State of Maryland (and the federal government) cannot recognize or determine "grandchildren", "aunts", "uncles", "mothers", "fathers" etc among grown adults and especially not in determining these kind of property rights and protections. Nobody is doing a biology test or a subjective social analysis.  **There**

**is no such thing** as a "statutory bona fide tenant", **anyone** who occupies land in subordination to another's title is a "tenant", see Black's Law Dictionary. Instead it is still a "color of title" or for a "claim to possession" on the underlying mortgage relationship, and the "immediate possessory estate in the land", aka "the occupancy", which must be fully protected to allow protection for anyone at all.

## FEDERAL QUESTION JURISDICTION

11.     Because there are several Federal Questions before this Court, other related matters will be drawn up, and also heard in this forum. The Plaintiff did not pay for the new "title" sold at the related sheriff' sale, ratified by the State Court on March 12, 2019.

12.     U.S. Bank N.A. as some kind of "Certificate Trustee" **does not stand in any possibility** to make this "credit bid purchase", and they do not under any circumstance participate in "foreclosures", nor actual or constructive possession of residential real property. See publications attached by exhibit following, where the removal plaintiff specifically denies its own case: "Role of the Corporate Trustee by U.S. Bank N.A."

13.     A 'securitization trust' is structured so that the very premise is impossible, with a "corporate trustee" handling only distant paperwork duties. The State Court generically refuses to determine these rights, and will summarily grant

"judgment for immediate possession", in violation of due process, substantive rights to property and liberty, prevailing federal law, and the common law as it is guaranteed under the Maryland Constitution, held to apply by the 14th amendment of the United States Constitution.

14.     A "securitization trustee" (plaintiff) is an abstract corporate entity (often an actual Bank) that does nothing but "securitize" everything, meaning draw up UCC documents and business contracts for the investment trust, etc. They are called a "Certificate Series Trustee" in the caption, and that means something.

15.     See attached "the Role of the Corporate Trustee by U.S. Bank" and another publication by the "American Bankers Association" that breaks it all down very plainly. They hold a nominal interest in the mortgage deed and a 5th party security interest in the debt paper, but they do not have the legal right to get paid on the debt obligations, nor any equivalent duties either.


### DUE PROCESS IN MORTGAGE FORECLOSURES

16.     The Constitution protects the right of due process. The premises of the "Uniform Commercial Code" are being routinely misused and misapplied as matter of **judicial policy, practice and procedure** in nearly every state of the Union.  There is no bearing or basis to the "UCC" in residential foreclosure matters supplied by the federal product.

17.     This is "Fannie Mae" and "Freddie Mac" and "Ginny Mae" and such. These aren't negotiable instruments or crop liens or monetary IOU's, these are residential standard federal bank mortgages. The entire system is a federal system, **and it is unavoidably federal** at all times in the related jurisdiction.

18.     The so-called "purchaser" at the related "sheriff sale" must have bid on a credit judgment after approval by the Maryland State "foreclosure court", or the local Circuit Court sitting in a foreclosure jurisdiction. The only possible bidder on that judgment is the person or entity <u>legally</u> entitled to demand payment on the related "mortgage debt" instrument, or on assignment.

19.     See ***Carpenter v. Longan,*** 83 U.S. 16 Wall. 271 (1872): *"[t]he **mortgage follows the note**. The mortgage **is only a mode** of enforcing a lien"* (and that) *"Accessorium non ducit, sequitur principale."* The accessory doesn't speak, what follows is the principle. *Again **Carpenter v. Longan,*** 83 U.S. 16 Wall. 271 (1872), which also noted that going back to England:

*"Matthews v. Wallwyn* (4 Vesey 126) is usually much relied upon by those who maintain the infirmity of the assignee's title. In that case, the mortgage was given to secure the payment of a **nonnegotiable bond**. The *Lord Chancellor*…said, finally: "**The debt therefore is the principal thing**, and it is obvious that if an action was brought on the bond in the name of the mortgagee, as it must be, **the mortgagor shall pay no more than what is really due upon the bond**; if an action of covenant was brought by the covenantee, *the account must be settled in*

*that action.* In <u>this</u> [Chancery] Court, the **condition of the assignee cannot be better than it would be at <u>law</u>** in any mode he could take to recover what was due upon the assignment." (*It is a Chancery Court action, not strictly "law".*)

20.     The principle is distinctly recognized that the measure of liability upon the instrument secured **is the measure of the liability chargeable upon the security**. The condition of the assignee cannot be better in law than it is in equity, and "mortgage foreclosure" is inherently an equitable jurisdiction since forever.

21.     Based on the evidence in the Maryland record, an impossible "Affidavit of Debt" was submitted, which is unconstitutional on its face. The mortgagor is entitled under the 14th amendment to equal protection and all due process guarantees in the nature of foreclosure jurisprudence.

22.     The first attached exhibit identifies the whole "sale report", which arbitrarily and impossibly assigned nearly **"$3,236,000"** of "bidding credit" based on this unconstitutionally inapposite statement to "U.S. Bank as Trustee", barred for all the ongoing reasons. Including, that it is "holding" a mortgage note.

**23.**     The premise that "holding" a negotiable instrument entitles the plaintiff to "foreclosure" is completely wrong, yet it has been nearly adopted without roper challenge, although briefly[1] considered by the **Maryland Court of Appeals:**

---

[1] It was deemed a waiver of the question after failing to develop the case record; the appellant had only raised the issue in a "reply" brief. **Not** waived here, it is foundational to the instant 'removal' action.

*Hosea ANDERSON, et ux. v. John S. BURSON, et al.* **No. 8, Sept. term 2011:** *"Did the Court of Special Appeals err in relying on the Uniform Commercial Code, as enacted in Maryland, to determine that the [unendorsed] Note was properly transferred to Deutsche, while disregarding contrary language in the Pooling and Servicing Agreement which created the securitized trust?"*

24.     Here, **the indorsements and otherwise must be wholly ignored**, and the "UCC" **cannot apply in federal system residential foreclosure actions** (or in "trust deed sales"). The mortgage is **not a negotiable instrument**, and neither is the mortgage debt, which is based on an <u>installment contract</u> for years.

25.     **All the "indorsements" on this "note" must be ignored**, because it is not a note at all. A "mortgage note" is really an installment contract for many years of monthly payments; it is only a sheaf of barely stapled loose-leaf paperwork.

26.     No part of it was "negotiable", and it cannot be presented or exchanged for payment anywhere. It was not "presented" either (see UCC 3-501), which **inherently fails to exhaust the plain remedy** if the mortgage debt was somehow deemed negotiable. They cannot have **both** the note **and** the judgment credit

27.     The typical "homeowner" residential mortgage debt under the "Fannie Mae", "Freddie Mac" and "Ginnie Mae" systems and other commercial banks making "federally related loans" **are strictly non negotiable**. It is no different than the residential mortgage deed, which is a recorded instrument.

*28.*      In fact, the "mortgage follows the note", so the mortgage security follows the mortgage installment debt. The right to payment on the **non negotiable debt** is **also** the same right to credit bid at the later trustee sale, which is the key. Yet by inapposite application of "negotiable" standards to mortgage debt, the purchaser now holds **both** the imaginary "note" **and** the purchasing credit.

 ***Carpenter v. Longan***, *supra*: *"The assignment ("indorsement") of a note underdue raises the presumption of the want of notice, and this presumption stands until it is overcome by sufficient proof.* ***The case is a different one*** *from what it would be if the mortgage stood alone**, or the note was nonnegotiable, or had been assigned after maturity.*** *... "The mortgage was conditioned to secure the fulfillment of that contract… If the mortgagor desired to reserve such an advantage;* ***he should have given a nonnegotiable instrument****. If one of two innocent persons must suffer by a deceit, it is more consonant to reason that he who "puts trust and confidence in the deceiver should be a loser rather than a stranger."* ***Carpenter v. Longan***          *\*emphasis added*

29.      The only evidence of this "mortgage debt" are the "**non-negotiable loan documents**" required to be part of the original process under the Maryland rules of civil procedure, and all the later "indorsements" on that paperwork are irrelevant to mortgagor or the "borrower". These "indorsement stamps" that are so commonly seen on mortgage paperwork in court cases actually fall under a 5th party chattel paper lien in the UCC ("Uniform Commercial Code") at **§ 3-303**.

30.      It is probably "evidence" of a security interest in the value of the debt, but it is not an actual or legal right to payment, or in support of a "credit bid" at 'trustee sale'. Nobody owns this "note" by now, as it was converted through later "negotiations" into a stock-collateral for the captioned investment trust, which should be none of our business and not their problem.

31.      The Plaintiff as captioned does not look to the Defendants as captioned, and we don't look to them either. The "indorsements" are just a way of marking this "hold" on the mortgage, and it really shows that the whole thing is circulating like money or currency. It's only a "stock equity", they already pay all the bills (including taxes and charges), and the *trustor* is entitled to buy out the difference, which is probably zero.

32.      The **U**niform **C**ommercial **C**ode applies to elements of the security interest in the 'chattel paper' under **§ 3-303,** but it is absolutely barred **'in rem'. T**he <u>action</u> on **that** lien runs *in personam*, only against the "maker" or "issuer" of the paper. "Personal Claims" are generally barred in foreclosure of any home mortgage, especially in the federally related material.

## WHAT IS SECURITIZATION

33.     Securitization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. *See* '*Christopher L. Peterson*: *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*', 78 U. Cin. L. Rev. 1359, 1367 (2010).

34.     The investment bank bundles together the multitude of mortgages it purchased into a "special purpose vehicle," usually in the form of a trust, and sells the income rights to other investors. *Id*. A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors. *Id*.

35.     **It is the positive duty of the Mortgage Servicer** to pay for all property taxes and municipal charges, to insure and guarantee maintenance of the place, and to provide the best organization for the Trust possible in good faith. This means generating profits for investors and improving and keeping the collateral.

36.     It could not mean destroying the collateral and inflicting "overhead" and legal charges that multiply the entire value of the property many times over. No rational investor behaves this way, so it has nothing to with the securitization trust itself, for the obvious results.

37.     The real plaintiff is only a debt collection law firm of "substitute trustee's" (see caption) that rents their 'name plaintiff' from the "Corporate Trustee". This is a collusion that must set off in big damages, it is a **fraudulent litigation maintenance**, or "*champerty*" when a stranger 3rd party maliciously vexes up frivolous litigation funded by an outsider.

38.     There has to be an 'arm's length' nature to any transaction, including judicial cases. The "Corporate Trustee" is willfully allowing their name to be used for this nefarious purpose, literally to collects "fees" for letting rogue law firms sue on defaulted deeds in their name and capacity, deeds which are supposed to be in default by contract and 'resulting trust'. They are literally suing the stock shares and disrupting the business organization while wrecking its economy.

39.     They are pretentiously reviving the idea that this is a mortgage that has to be 'paid', when the whole point is to let it default, since the payment program is impossible anyway. It was never designed to work as a 'traditional' mortgage, or a purchase money mortgage, by clogging up the redemption.

40.     The amount from the beginning is usually unpayable (too much unsecured debt) and easily becomes double the property value in a very short time. It is not a *defeasible deed*, it is *indefeasibly fettered.* It is 'clogged' up with bad debt and malicious servicing and a bizarre "paper chase" where holding a stack of papers in your hand makes you the "holder" of the mortgage, literally.

41.       What they are doing to their own supposed investment shows that these people do not have any interest in the property value at all, which means they shouldn't be pursuing foreclosures to begin with. See attached "Role of the Corporate Trustee by U.S. Bank N.A."

<u>MORTGAGE "NOTES"</u>

42.       **Additionally**, if the "mortgage note" was construed as "negotiable" (which is impossible, it is a loose leaf installment contract for many years worth of monthly payments without *unique specialty*), then the Plaintiff has failed to exhaust a plain administrative or statutory remedy; namely, to "present" the instrument for "payment" at the "place of payment".

43.       If it is like a check or draft, it must be exhibited in hand and offered in exchange for the satisfaction of whatever obligation, like a subway token or a movie ticket, or a check or draft. If there was a debt (which there is not), it did not 'merge' with the 'mortgage paperwork', and it cannot be circulating or "held in possession" by any party at all.

44.       It is not valuable, existentially singular or mechanically related to anything. The 'plaintiff' has failed to exhaust that this note was "presented for payment' if it were negotiable, and any exhibit that was attached did not appear as a check, draft, bill of exchange or another unique instrument that carries an obligation by physical merger with circulation device.

45.     If the 'plaintiff' was somehow 'in possession' of an enforceable instrument, it is only enforceable in the negotiable hands of one legal body at a time, in which case either "the agent" or "the plaintiff" must exhaust this remedy by "presenting the note for payment", the one cannot derive standing from the other. They cannot have **both** the note **and** the judgment credit. Only the **P**erson **E**ntitled **T**o **E**nforce is entitled to enforce, and it can't be two people going to the movies on one ticket, even if they are related.

46.     It is impossible to know **who** to pay if the imaginary negotiable 'specialty instrument' is never presented, and they cannot have **both** the judgment **and** the note. If the "mortgage note" is still "in their possession", it means they failed to mark it out of circulation ('refused', 'paid', 'dishonored') or **exhaust the administrative or statutory remedy**, and that it is still then "good paper", **unmarked** and **undistressed** by any **refusal, dishonor or payment**.

47.     See for example, *Veal v. Am. Home Mortg. Servicing Inc.*, (*In re **Veal***), 450 B.R. 897 (9th Cir. BAP 2011):

*"[T]he rules that determine who is entitled to enforce a note are concerned primarily with the **maker** of the note. They are designed to provide for the **maker** a relatively simple way of determining to whom the obligation is owed and, thus, whom the maker must pay in order to avoid defaulting on the obligation. U.C.C. § 3–602(a), (c)."*

*"By contrast, the rules concerning transfer of ownership and other interests in a note identify who, among competing claimants, is entitled to the note's economic value (that is, the value of the maker's promise to pay). Under established rules, **the maker should be indifferent** as to who owns or has an interest in the note **so long as it does not affect** the maker's ability to make payments on the note."* … *"Or, to put this statement in the context of this case, the [borrowers] should not care who actually owns the Note—and it is thus irrelevant whether the Note has been fractionalized or securitized— **so long <u>as they do know who they should pay</u>**." **Veal, supra.***

48.     **But we have no idea whom to pay**, because it is not a UCC instrument susceptible of "presentment", it has not actually been presented, nobody says or claims they have even tried to present it for payment, or to obtain payment on the actual instrument itself. *See also* Dale Whitman, *"The Person Entitled To Enforce*: *Lessons Learned from BAC Home Loans Servicing v. Kolenich",* ABA Real Property Newsletter, Dec. 2012, at 1.

49.     *See, e.g., In re* **Sia**, 2013 WL 4547312 (Bankr. D. N.J. 2013) (*showing holder of note can enforce it <u>even if it is not the owner</u>; <u>ownership is irrelevant</u> to the right to enforce and identity of owner is of no importance to <u>maker</u> of note*). A note does not have two holders, and it is not "either or". We did not "make" a note.

50.     In this case it is nobody, because to express the potentiality of a claim for legally unrelated UCC relief fails to comport with the foreclosure jurisdiction of the former Chancery Court, limiting the action in mortgage foreclosure to the

real estate "*de terris*", and barring all personal claims like "negotiable instruments" and other UCC matters. We did not *make* or *draw* a commercial 'specialty' note, and it is not "payable to **order**", notwithstanding any extemporaneous misuse of the common language.

51.      How do you "order" the payment on a mortgage? This destroys any pretense of negotiability *ab initio*. And the plaintiff, or its principals, failed to mark the imaginary "negotiable mortgage note" out of circulation. It is not enough, the question of standing; it is a question of subject matter and stating a claim for relief. They now have **both** judgment **and** the note!

52.      That means if it is a negotiable instrument, they got paid twice and can now "present the mortgage note" over and over again. If this "note" has become "payable to the order of", then present it at the "payment window" or "place", like any other negotiable, such as check or draft or subway token.

53.      Any note exhibited within the original complaint of record is simply unmarked, without indication of distress, dishonor or refusal. It must literally be cancelled by some imprint, and thereby removed from current circulation. It is a *currency*, and it is still moving. It is denied that any defendant ever "made" or "drew" any "note", and any exhibit "promissory note" is simply an installment contract for many years of monthly payments.

54.     It is not payable at once, or on demand, and it's terms, conditions and accounting cannot be determined from within the "four corners" of the instrument, being probably some "48 + corners" instead, 12-20 pages loosely stapled together because there is nothing important or original about the note paperwork itself, and cannot be legally held as "in the specific possession" of anyone, and it is not a "specialty".

55.     It can only be a copy since most or all such "notes" are routinely destroyed by shredding after being digitally memorialized and this is a fact of common public knowledge, besides a reasonable inference. No one would shred a _real_ negotiable instrument, any more than they would normally destroy federal currency notes like a "$10 bill", because it is inherently valuable. There is nothing inherently valuable or productive about physically touching some multi page loose leaf paperwork that describes a common law contract. **No part of the "mortgage note" is negotiable against the mortgagor or the "borrower"**.

### SHERIFF SALE WAS A CLOG ON THE EQUITY OF REDEMPTION AND THE RIGHT TO REDEEM A MORTGAGE IS PROTECTED BY THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

56.     The sale must be stricken or modified on failure of the record to conform with the **constitutional subject matter jurisdiction** of "mortgage foreclosure". A "residential Fannie Mae standard note" is not in any way shape or form a

"negotiable instrument"; and "federally related real estate loans" are not "collateral" within the "Uniform Commercial Code", the subject of monetary instruments, bills of exchange and other paper chases.

57.      A "negotiable instrument" is a unique token that gets passed around by "negotiation". It could be a check or draft, a movie ticket or subway token, a presentable bill of lading, a hat check slip, or even a personal "IOU" drawn up by the maker in hand. It is not a 20 page sheaf of easily reproducible "loan papers" barely stapled together, that are only a common law contract for many years of monthly installment payments.

58.      It is impossible to "present" a mortgage note for payment, it has no "place of payment", no means to identify the presenter or to endorse the instrument out of circulation by written restriction. Contrary to the language in the note, it is **absolutely not payable to the order of anybody**, and it is only paid through a frequently changing 3rd party servicer over many years of time in month quotas.

59.      The strictly '**non-negotiable**' mortgage note leads the equally non negotiable mortgage deed, because "the security follows the debt", not the other way around. But here the Plaintiff only has a negotiation with this plainly **non negotiable paperwork**, and no assignments or other transfers proven or even alleged within the original complaint itself.

60.     **The Court must ignore any "indorsements"** as these may appear after the grantee on the mortgage subscribed the **non negotiable installment contract**. These "UCC negotiations" falls under *U.C.C. § 3-303, where an instrument is merely issued or transferred <u>for value</u> if:*

> *1) the instrument is issued or transferred **for a promise of performance**, to the extent the promise has been performed;*
>
> *2) **the transferee acquires a security interest or other lien in the instrument** other than a lien obtained by judicial proceeding;*
>
> *3) the instrument is issued or transferred as payment of, or as security for, an **antecedent claim against any person**, whether or not the claim is due;*
>
> *4) the instrument is issued or transferred **in exchange for a negotiable instrument**; or*
>
> *5) the instrument is issued or transferred in exchange **for the incurring of an irrevocable obligation to a third party** by the person taking the instrument.*

*Accepting an instrument without a qualified endorsement waives all defects there may be in the instrument, including the value, or lack of value, that comes with it. **Accepting** an instrument for **value** and returning it is **notice to the issuer** that the endorser is not providing new value, but is **converting** the issuer's **obligation to pay** the instrument **into the value**, <u>thereby making the instrument negotiable</u>; or by converting its right to "collect" on the instrument through a likewise "indorsement". (This describes the process of "monetization")*

61.     Often municipalities will "indorse" their outstanding "collection accounts" over to the local bank, including "violation tickets" and "tax bills". **It does not become "enforceable" against the action-debtor,** like the defendant on

a parking ticket. At least the tax-bill and the violation ticket are an original, with a serial number, a specific claim, and it identified all at once on unique paper.

62.     **It is a preposterous fantasy** to stand the entire 'foreclosure industry' on these fictional and irrational premises, that by "stamping" the dummy sheaf of barely stapled paperwork this will "transfer" the legal right of enforcement in a foreclosure court. They may have all the "transfers for <u>value</u>" they like, but the call to enforce payment lies only with the owner or the <u>legal</u> holder of the mortgage note. This cannot be determined from later "UCC endorsements", and the mortgagor/borrower is **not responsible** for these "endorsements".

63.     Instead, **it is actually a defense to 'non-payment'**, because it clearly signals that the instrument is being traded "for value" on a financial market under **U.C.C. § 3-303**, and that it is a stock equity. The "action" of the mortgage security has been suspended while the payment is still itself floating around the market. They cannot claim the check without cashing it first, or at least voiding the indorsements, **and calling all the insurance guarantees first**.

64.     The varying Courts have misinterpreted the plain evidence and come to the wrong opposite or inapposite conclusion every time. The subsequent "indorsements" **do not** "transfer the note" and they are **not the responsibility of the mortgagor**. The endorsements do not lie on his property; these are "commercial chattel paper liens", to claim the **value** of the proceeds, not the right

to enforce the note in a "mortgage foreclosure". Indeed, it is absolutely outrageous that this Plaintiff appears and proffers that it is somehow the "foreclosing party with a real interest in the payment proceeds", when it is exactly the opposite by all evidence: they are literally captioned as "pass through mortgage certificate series trustee".

65.     A "securitization" or "certificate trustee" by legal definition **has no interest whatsoever** in the mortgage claim, does not handle foreclosures, loan modification, maintain post sale properties, or do anything but perform a "corporate role", on behalf of an extended 7 or 8 party relationship that make the "trust fund", as it becomes divided into certificates and traded on Wall Street.

**66.**     See attached **exhibit publications**, "The Role of the Corporate Trustee by US Bank" (who is also a very common plaintiff in these actions), and the related "Role of the Trustee in Asset Backed Securities", published by the American Bankers Association. **The Court must take Judicial Notice**. The structure of the economic organization must be seen and understood in the context of these kinds of "mortgage foreclosures".

**67.**     It is not a "strict" foreclosure claim, but an equitable action to address the equity of redemption. If the Court has granted "Final Judgment" and ordered ratification of the Sale, it has done so without jurisdiction of the subject matter and in a manifest abuse of its jurisdiction or discretion.

**Wherefore,** the "trustee sale" of the subject premises in the Montgomery County Maryland Circuit Court must be modified or stricken on the foregoing reasons. And may all other relief due in law and in equity be granted, as in the interest of justice. Indeed, they may have their deed, but it is no bar to petitioner's equity of redemption and the Courts must find an appropriate legal and equitable remedy under the circumstance, declaring survival in the mortgagor's title and barring possession to the purchaser, or its assigns. The equities are not with the Plaintiff yet the whole question is constitutionally circumscribed by "Equity".

The Court **must impose a constructive trust** and find a <u>resulting trust</u>, or it may ordain "sale price redemption" less setoffs. While legal title may nominate transfer to the purchaser at sheriff sale, the real ownership must remain with the defendants, and this Court is moved for an "appropriate order" defining the rights and remedies of the parts. See ***Brobst v. Brock***, 77 U.S. 10 Wall. 519 (1870) which states at syllabus point four:

> *"An irregular judicial sale made at the suit of a mortgagee, **even though no bar to the equity of redemption**, passes to the purchaser at such sale all the rights of the mortgagee as <u>such</u>."*

## RELIEF REQUESTED

24

i.  The plaintiff must be made to **post a court approved surety bond** for three times the ""non negotiable mortgage debt", as it is established after a constitutionally proper affidavit, answer of the defendants, discovery, and subject to trial on the merits.

ii.  The real property must be sold at public auction and the defendants captioned granted the right to redeem plus 10% premium, and costs, judgment interest going forward, escrows, etc.

iii.  The right to redeem must be granted for at least 3 years. Maryland law controls the lien of redemption and its later revival. This Court must find "*in rem set-offs*" against the sale price redemption, and determine the organization and payment of this price.

iv.  The principle of 'equitable recoupment' applies, and the Court may find that the 'securitization set-off' and the 'FDIC' policy guarantees warrant the imposition of a 'constructive trust', allowing the bond to float on the markets as it does today. The first duty of the Servicer or another designated party is to pay all taxes, charges and guarantee both the occupancy and the maintenance of the premises.

v.   Because the place is well occupied and well maintained, the foreclosure of the lien is barred without just and proper grounds set forth under affidavit and by proper petition or another action. There is no "right" to foreclose a deed, it is constitutionally an <u>equitable</u> action heard by a **chancellor**.

vi.   **May** the court find all other relief due in law and equity, including to "set off" the entire mortgage account down to "zero", after accounting the numerous damages and set-offs that will be pleaded henceforth, including consumer and regulatory violations, along with **equitable recoupment**.

### V.   RULE 11 STATEMENT

This certifies that this pleading is made to the best of my knowledge, information, and belief formed after an inquiry reasonable under the circumstances. 1) It is not being presented for any improper purpose, 2.) the claims defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending modifying or reversing existing law or for establishing new law, 3.) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discover, and 4.) the denials of factual contentions are warranted on the evidence or if specifically so identified, are reasonably based on belief or a lack of information.

**In witness whereof,** this Notice is made to this Honorable Court with a plea for an evidentiary hearing consistent with the representations made herein.

*//S//* Thomas Kerns McKnight, Esq

1901 Wyoming Avenue, Suite 33

Washington DC. 20009

202 491 4550

202 318 0887

attorney@tkmcknightpc.com

Maryland Bar #0412200003 & Federal 317972

Certificate of Service

CERTIFICATE OF SERVICE

I hereby certify that on or about the 21th day of March,  2019, I will mail a copy of this pleading to

the following:

Laura O'Sullivan, Esq, Et Al

C/O McCabe, Weisberg & Conway, LLC

312 Marshall Ave, Suite 800

Laurel, MD. 20707

/s/ Thomas Kerns McKnight

Attorney at Law (Maryland bar # 0412200003 and Federal # 17972)

1901 Wyoming Avenue, Suite 33,

Washington DC. 20009.

Phone: 202 491 4550.

Fax:  202 318 0887.

attorney@tkmcknightpc.com